UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTOMOTIVE COMPONENTS HOLDINGS,
LLC, ET AL.,

        Plaintiffs,

v.

KONAL ENGINEERING & EQUIPMENT, INC.,

        Defendant.
_____/

Case No. 12-10762

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE R. STEVEN WHALEN

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL [12]

This case concerns allegations of breach of contract and fraud. Defendant seeks to dismiss Plaintiffs' fraud-in-the-inducement claim, as well as all claims brought by Plaintiff Ford.

On August 21, 2012, the Court heard argument on the motion. For the reasons stated below, Defendant's Motion for Partial Dismissal [12] is GRANTED with respect to Count I and DENIED with respect to Counts II through VI.

### I. Factual Background

Plaintiff Automotive Components Holdings, LLC ("ACH") is an affiliate of Plaintiff Ford Motor Company ("Ford"), and sells Ford completed dashboards and instrument panels. ACH contracted with Defendant Konal Engineering and Equipment, Inc. ("Konal") to purchase machines to make "cast skins," the visible portion of the dashboard area of Ford vehicles.

Plaintiffs allege that Konal held themselves out as very proficient in the design of said machines. Plaintiffs allege that Konal's website "extols its cast skin manufacturing abilities [as] 'continu[ing] to revolutionize the industry . . . .'" Plaintiffs also allege that Konal's website states that its manufacturing solutions "have changed the way the world manufacturers or processes . . .

automotive assemblies throughout the world" and that their equipment "has proven to be reliable and virtually maintenance free." Plaintiffs allege that representatives of Konal regularly described the advantages of Konal's cast skin machines as compared to Konal's competitors. Plaintiffs also allege that Konal presented itself favorably in terms of "automotive production generally."

Plaintiffs allege that Konal was in fact inexperienced and had only designed one previous (deficient) machine prior to contracting with ACH. Plaintiffs alleges that both systems purchased from Konal (referred to as "System 1" and "System 2") failed to operate as guaranteed in the warranty section of the contract and that ACH will have to replace the systems. Plaintiffs also allege that Ford suffered lost sales because of the failure of the systems.

## II. Issues

### Standard

In evaluating a motion to dismiss under 12(b)(6), well-pled allegations in the complaint must be taken as true and construed in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). To survive a motion to dismiss or for judgment on the pleadings, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

### Fraud in the Inducement (Count I)

Defendant argues that Plaintiffs' fraud claim is barred by the "Economic Loss Doctrine," adopted by Michigan, which stands for the proposition that in a commercial transaction where the parties have had the opportunity to bargain, tort damages for fraud are not permitted, and that any

claims for fraud are governed according to the rules of the Uniform Commercial Code, which places the remedy in contract. *See Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 616 (Mich. 1992).

Plaintiffs argue in response that Konal's representations regarding their "general automotive engineering ability" and even about cast skin systems in general constitute fraud in the inducement, which is a recognized exception to the Economic Loss Doctrine. "It is well established . . . that a claim of fraud in the inducement represents an exception to the economic loss doctrine, where plaintiff can demonstrate that its fraud claim stands alone, separate from allegations that support plaintiff's contractual claims." *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys., LLC*, 678 F. Supp. 2d 553, 567 (E.D. Mich. 2009) (Borman, J.) (citing *Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541 (Mich. 1995)). Thus, to survive a motion to dismiss on a fraud in the inducement claim, Plaintiffs must allege fraud unrelated to the contractual violations at issue. As stated by the Michigan Supreme Court:

> "[t]he distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract . . . [w]ith respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort. Such fraud is not extraneous to the contractual dispute among the parties, but is instead but another thread in the fabric of [the] plaintiffs' contract claim . . . [It] is undergirded by factual allegations identical to those supporting their breach of contract counts . . . ."

*Huron Tool & Eng. Co.*, 532 N.W.2d at 545.

3

Plaintiffs argue that their fraud in the inducement claims are separate from their breach of contract claims, because the breach of contract claims concern solely problems with "System 1" and "System 2," the performance of which was guaranteed by contract. Plaintiffs argue that their fraud claims are premised on Konal's general boasts regarding their automotive engineering and cast skin system design, which Plaintiffs argue are separate from the specific systems.

The Court does not find this argument persuasive. It is fairly clear that Konal's claims were directly relevant to their provision of Systems 1 and 2 in the contract. Moreover, case law requires much more tangential information to constitute fraud in the inducement. For instance, in *Ypsilanti Cmty. Utils. Auth.*, 678 F. Supp. 2d at 567, the alleged misrepresentations included the fact that the defendant, MVWAS: (1) was backed by an $8 billion dollar company; (2) that the company stood behind MWVAS; (3) that MWVAS was backed and supported by a research department and a technical group; (4) that MWVAS was insured by MWV; (5) that MWVAS was part of a partnership in which MWV was the only general partner; (6) that MWVAS was a publicly traded company on the NYSE; (7) that MWVAS was a division of the worldwide MWV. These facts were not true. However, the court noted that "[n]one of these statements relates to the quality or character of the goods involved. These statements relate to the character and quality of the contracting parties and, as such, take this claim of fraudulent inducement outside the barrier of the economic loss doctrine." *Ypsilanti Cmty. Utils. Auth.*, 678 F. Supp. 2d at 567. Similarly, in *Huron Tool & Eng. Co.*, 532 N.W.2d at 546, the court noted that, in refusing to allow a fraud in the inducement claim, that "[t]he fraudulent representations alleged by plaintiff concern the quality and characteristics of the software system sold by defendants. These representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached."

In the instant case, the situation is much closer to *Huron* than *Ypsilanti*. Plaintiffs attempt to separate out Konal's "general claims" about its engineering prowess from "specific promises" in the contract, but it is that the alleged fraudulent representations "concern the quality and characteristics of the . . . system sold by defendants," rather than completely independent claims regarding, for instance, the involvement of a larger corporation. This is therefore a classic "fraud interwoven with the breach of contract," which falls outside the fraud in the inducement exception.

Accordingly, Defendant's Motion for Partial Dismissal is GRANTED with respect to Count I.

**Count VI as to Plaintiff Ford Motor Company's Claim for Third-Party Beneficiary Status**

Defendant argues that Ford should not be permitted to assert Third-Party Beneficiary Status. Under Michigan law, third-party beneficiaries "st[and] in the shoes" of a contracting party and may enforce all provisions of a contract to the same extent that the primary contractor can do so. *See* Mich. Comp. Law § 600.1405.[1] Thus, if Ford is a third-party beneficiary to the contract, they can bring any claim that could be asserted by ACH.

Defendant argues that Ford is not a third-party beneficiary to the contract for a number of reasons. First, Defendant notes that the contract specifically states that "[b]uyer under this [purchase order] is Automotive Components Holdings, LLC ('ACH') not Ford Motor Company." Therefore, Defendant argues, Ford is not a "party" to the contract. Plaintiffs argue in response that whether or not Ford is a party, they are a third-party beneficiary, a status that is determined by analysis of the contract as discussed below. Defendant provides no case law that the designation of one person as

---

[1] "Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee."

5

not being a "party" to a contract means they cannot be a third-party beneficiary. Indeed, as Plaintiffs note, if a person is a *party* to a contract, there is no need for that person to be a third-party beneficiary.

Defendant next argues that "[a] person is a third-party beneficiary of a contract only when the contract establishes that a promisor has undertaken a promise directly to or for that person." *Schmalfeldt v. N. Pointe Ins. Co.*, 670 N.W.2d 651, 654 (Mich. 2003). Further, Defendant argues that "the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Id.* Defendant argues that Ford is not directly identified by the contract as a third-party beneficiary.

However, additional language in *Schmalfeldt* and other cases indicates that the "directly referred to in the contract," can also mean "a class" of persons that was intended to be a third-party beneficiary to the terms of the contract. *Id.* at 655; *see also Koenig v. S. Haven*, 597 N.W.2d 99 (Mich. 1999) (holding that under Mich. Comp. L. § 600.1405 the test for determining third-party beneficiary status is to look to whether the contract commits a party to undertake something directly for the benefit of a person or class of persons defined as "something less than the entire universe"). Thus, the question is whether the contract identifies a "class of persons" that Ford falls into as beneficiaries.

The contract states that its warranty provisions apply to "[ACH], [ACH's] customers, and the users of [ACH's] products." The contract also states that its indemnity provision applies to "[ACH] and its affiliated companies . . . and customers . . . ." Finally, the remedies portion of the contract states that Konal will reimburse ACH or "[ACH's] customers" for losses incurred directly or indirectly by the products supplied by Konal. Defendant argues that this "boilerplate" language

6

is not specific enough, referencing the quote from *Schmalfeldt* that the party must be "directly referred to in the contract." Defendant argues that Michigan law "prohibits a known party that could have been easily included in the contract but was not from later claiming third beneficiary status." *Van Elslander v. Thomas Sebold & Assocs., Inc.*, 2008 WL 5077011, at *4 (Mich. Ct. App. Dec. 2, 2008). Defendant's quote, however, is not accurate when read in context. *Van Elslander* concerned a contract that had specifically defined who the "owner" was in the contract, and involved a later owner attempting to claim that he should also be included in that group. Thus, its language is inapplicable.

It is clear that Ford qualifies as a "customer" of ACH. According to Plaintiffs' allegation, which must at this stage be taken as true by the Court, Ford is essentially ACH's *only* customer. Further, it is clear that Ford is an "affiliated company" of ACH - ACH sells parts to Ford as part of Ford's manufacturing process. Accordingly, the Court finds that Ford falls into a class intended to be third-party beneficiaries as designated by the contract.

Because the Court finds that Ford is a third-party beneficiary, it is unnecessary to evaluate Defendant's other specific arguments regarding whether Ford can enforce the express and implied warranties in the contract, as Ford would have that power as a third-party beneficiary. Defendant's Motion for Partial Dismissal is therefore DENIED with respect to Counts II-VI.

### Counts II, III, IV and V as to Plaintiff Ford Motor Company - Breach of Contract, Express Warranty, Implied Warranty, Indemnification

Even were the Court to find that Ford was not a third-party beneficiary, Ford would still be entitled to assert claims for breach of contract. Defendant moves to dismiss the above counts as to Plaintiff Ford Motor Company because, according to Defendant, Ford was not a party to the contract that created the warranties at issue and did not use or purchase product manufactured by Defendant.

Ford alleges that it is in "vertical privity" to ACH as ACH is an affiliated company that provides parts of Ford's finished product.

Defendant's main argument against the warranty being enforceable is that Ford did not purchase the "product or good" sold by Konal to ACH. Essentially, Defendant argues that the "product" made by Konal, machines used to create "cast skins" are not the product that is sold by ACH to Ford. Rather, ACH sells completed dashboards that utilize the cast skins for incorporation into Ford's vehicles. Defendant argues that "it is axiomatic that the implied warranties run to the product sold by the party who is claimed to have breached the implied warranties and not to other products that were produced by the original product." However, Defendant provides no case law in support of this "axiomatic" proposition.

Indeed, case law runs against Defendant. In *Jetts v. Stewart Bldg. Co., Inc.*, 2010 WL 2384931 (Mich. Ct. App. June 15, 2010), the Michigan Court of Appeals determined that the plaintiffs could bring a claim for breached of implied warranty against a brick maker even though the bricks had passed through the hands of another company, who used the bricks to make a structure for the plaintiffs. The court found that "[t]he fact that plaintiffs lacked any privity of contract with [the brick makers] is of no consequence since the claims involved a breach of implied warranty." Similarly, in terms of express warranties, said warranties are not limited "to direct seller" and the Michigan Uniform Commercial Code "does not indicate that a seller is restricted to one who directly sells good to the consumer." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). Thus, there is no particular requirement that an express warranty be limited to a direct buyer.

Here, the situation is more direct than homeowners suing a brick manufacturer. Ford alleges that it stands to directly lose profits because a machine that is involved in producing materials for use in completed Ford cars is faulty. Ford is in vertical privity with ACH because ACH and Konal

8

produce a "chain of goods" for use in Ford products. Ford is also a "customer" and "affiliate" of ACH. Thus, by the terms of the express warranties in the contracts (discussed above) as well as implied warranties as described in the UCC and Michigan equivalent, the Court finds that, even if Ford is not a third-party beneficiary, it has standing to assert implied and express warranty claims.

### III. Conclusion

For the reasons stated above, Defendant's Motion for Partial Dismissal [12] is **GRANTED** with respect to Count I. Defendant's motion is **DENIED** with respect to Counts II through VI.

**SO ORDERED**.

Dated: October 16, 2012

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

---

### CERTIFICATE OF SERVICE

I hereby certify on October 16, 2012 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 16, 2012: **None.**

s/Michael E. Lang
Deputy Clerk to
District Judge Arthur J. Tarnow
(313) 234-5182

9