# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AUTOMOTIVE COMPONENTS
HOLDINGS, LLC and FORD MOTOR
COMPANY,

                Plaintiffs,

v.

KONAL ENGINEERING AND
EQUIPMENT, INC.,

                Defendant.

Case No. 2:12-cv-10762-AJT-RSW

Hon. Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

---

| | |
|---|---|
| James P. Feeney (P13335) | Peter M. Alter (P10145) |
| Thomas S. Bishoff (P53753) | R. Christopher Cataldo (P39353) |
| Thomas H. Trapnell (P74345) | David J. Poirier (P62928) |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| Dykema Gossett PLLC | Jaffe, Raitt, Heuer & Weiss, PC |
| 400 Renaissance Center | 27777 Franklin Rd., Ste. 2500 |
| Detroit, MI 48243 | Southfield, MI 48034 |
| (313) 568-5341 or (313) 568-5414 | (248) 351-3000 |

---

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING COUNT I OF PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM

Plaintiffs Automotive Components Holdings, LLC ("ACH") and Ford Motor Company ("Ford") (jointly "Plaintiffs"), by their counsel, Dykema Gossett PLLC, respectfully request that the Court reconsider its Opinion and Order of October 16, 2012, granting in part and denying in part Defendant Konal Engineering and Equipment, Inc.'s ("Konal") Motion for Partial Dismissal, with respect to the Court's dismissal of Plaintiffs' claim for fraud in the inducement (Count I).

Counsel for Plaintiffs sought Konal's concurrence in the relief requested in this motion on October 25, 2012, but concurrence was not obtained.

In support of this Motion, Plaintiffs rely upon the Brief in Support filed contemporaneously herewith.

WHEREFORE, Plaintiffs respectfully request that the Court reconsider its Opinion and Order of October 16, 2012, enter an order denying Konal's Motion for Partial Dismissal as to Count I of Plaintiffs' Complaint, and grant such other relief as the Court deems appropriate and just.

Date: October 30, 2012                    *Respectfully submitted,*

                                          DYKEMA GOSSETT PLLC


                                          By:/s/ Thomas H. Trapnell
                                             James P. Feeney (P13335)
                                             Thomas S. Bishoff (P53753)
                                             Thomas H. Trapnell (P74345)
                                             Attorneys for Plaintiffs
                                             400 Renaissance Center
                                             Detroit, MI 48243
                                             (313) 568-5341 or (313) 568-5414
                                             jfeeney@dykema.com
                                             tbishoff@dykema.com
                                             ttrapnell@dykema.com

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AUTOMOTIVE COMPONENTS
HOLDINGS, LLC and FORD MOTOR
COMPANY,

                Plaintiffs,

v.

KONAL ENGINEERING AND
EQUIPMENT, INC.,

                Defendant.

Case No. 2:12-cv-10762-AJT-RSW

Hon. Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

---

| | |
|---|---|
| James P. Feeney (P13335) | Peter M. Alter (P10145) |
| Thomas S. Bishoff (P53753) | R. Christopher Cataldo (P39353) |
| Thomas H. Trapnell (P74345) | David J. Poirier (P62928) |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| Dykema Gossett PLLC | Jaffe, Raitt, Heuer & Weiss, PC |
| 400 Renaissance Center | 27777 Franklin Rd., Ste. 2500 |
| Detroit, MI 48243 | Southfield, MI 48034 |
| (313) 568-6800 | (248) 351-3000 |

---

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING COUNT I OF PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM**

## STATEMENT OF ISSUES PRESENTED

I.      Whether the Court should reconsider its Order dismissing Plaintiffs' claim for fraud in the inducement because the case law cited by the Court in support of its ruling does not, in reality, require Plaintiffs to plead misrepresentations which are "completely independent" of, "tangential" to, or not "directly relevant" to performance under the related contract in order to state a claim for fraud in the inducement against Konal?

Plaintiffs answer: Yes.

II.     Whether the Court should reconsider its Order dismissing Plaintiffs' claim for fraud in the inducement because in so ruling, the Court did not consider numerous other authorities, including many of the authorities cited by Plaintiffs, which make clear that a claim for fraud in the inducement need not be premised on alleged misrepresentations which are "completely independent" of, "tangential" to, or not "directly relevant" to performance under the related contract?

Plaintiffs answer: Yes.

III.    Whether the Court should reconsider its Order dismissing Plaintiffs' claim for fraud in the inducement because it did not hear oral argument on the legal and factual bases of Plaintiffs' fraud claim, and was therefore misled by Konal's misrepresentations of Plaintiffs' claim in Konal's briefing of its motion to dismiss?

Plaintiffs answer: Yes.

IV.     Whether the Court should reconsider its Order dismissing Plaintiffs' claim for fraud in the inducement because at the Court's direction, Plaintiffs have prepared a marked-up version of one of Konal's sales presentations which demonstrates that Konal made numerous pre-contractual fraudulent representations to Plaintiffs which are indeed "completely independent" of Konal's later breaches of warranties?

Plaintiffs answer: Yes.

## STATEMENT OF CONTROLLING AUTHORITY

In support of their *Motion for Reconsideration*, Plaintiffs rely upon *Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.,* 209 Mich. App. 365, 532 N.W.2d 541 (1995), *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys., LLC,* 678 F. Supp. 2d 553 (E.D. Mich. 2009), and the additional authorities cited in the accompanying Brief in Support.

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED .................................................................. i

STATEMENT OF CONTROLLING AUTHORITY ................................................ ii

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ...................................................................................2

    A.  Konal Makes a Series of Either Knowingly or Recklessly False Statements During Sales Pitches to ACH .........................................................................................2

    B.  Plaintiffs Learn That Konal's Sales Pitches Intentionally Misrepresented Konal's Experience and Organizational Capabilities ...................................................3

    C.  Konal Moves to Dismiss Plaintiffs' Claim for Fraud in the Inducement, Based on Misrepresentations of Plaintiffs' Allegations ...........................................4

    D.  The Court Dismisses Count I of Plaintiffs' Complaint, Without Hearing Oral Argument on Plaintiffs' Fraud in the Inducement Claim ...........................................4

ARGUMENT .......................................................................................................7

    I.  Standard of Review .....................................................................................7

    II.  The Order Cites *Huron Tool* and *Ypsilanti* for Legal Propositions Which Those Opinions' Plain Language Does Not Support ...........................................7

    III.  The Order Overlooks the Additional Authorities Cited by Plaintiffs, Which Clearly Show That Allegations Underlying Claims for Fraud in the Inducement Need Not Be "Tangential" to or "Completely Independent" of the Related Contract ....................10

    IV.  In the Absence of Oral Argument on the Issue, the Court Was Misled by Konal's Misrepresentations of Plaintiffs' Fraud Allegations .............................................13

    V.  At the Court's Direction, Plaintiffs Have Prepared Additional Documentation in Support of Their Fraud in the Inducement Claim, Which the Court Did Not Consider Prior to Issuing Its Order .........................................................................15

CONCLUSION AND RELIEF REQUESTED .........................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carter v. Robinson,*
    211 F.R.D. 549 (E.D. Mich. 2003) ........................................................................7

*Groeb Farms, Inc. v. Alfred L. Wolff, Inc.,*
    08-cv-14624, 2009 WL 500816 (E.D. Mich. Feb. 27, 2009) ................................11

*Huber v. Crop Prod. Serv., Inc.,*
    No. 06-14564, 2007 WL 2746625 (E.D. Mich. Sept. 19, 2007).....................10, 11

*Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.,*
    209 Mich. App. 365, 532 N.W.2d 541 (1995)..........................6, 7, 8, 10, 11, 13, 17

*Metropolitan Alloys Corp. v. Considar Metal Marketing, Inc.,*
    No. 06-12667, 2007 WL 2874005 (E.D. Mich. Sept. 25, 2007).............................12

*Mid-American Gunite, Inc. v. Sauereisen, Inc.,*
    No. 06-11204, 2006 WL 1374505 (E.D. Mich. May 19, 2006) .............................13

*Scozzari v. City of Claire,*
    723 F. Supp. 2d 974 (E.D. Mich. 2010)..................................................................7

*Tramontana v. May,*
    Nos. 02-10012, 02-10234, 2004 WL 539065 (E.D. Mich. Mar. 16, 2004) ......................10, 11

*Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys., LLC,*
    678 F. Supp. 2d 553 (E.D. Mich. 2009)..........................................6, 7, 8, 9, 10, 16

RULES

Fed. R. Civ. P. 8(e)(2)............................................................................................12, 15

Local Rule 7.1(h) .......................................................................................................7

iv

## <u>INTRODUCTION</u>

The Court should reconsider its order of October 16, 2012 (the "Order," Dkt. 45), dismissing the claim for fraud in the inducement (Count I) filed by Plaintiffs Automotive Components Holdings, LLC ("ACH") and Ford Motor Company ("Ford") (jointly, "Plaintiffs") against Defendant Konal Engineering and Equipment, Inc. ("Konal"). There are several reasons for the Court to reconsider its Order and deny Konal's motion (the "Motion") to dismiss this claim. First, by their plain language, neither of the two cases the Court relied upon actually support the propositions for which they are cited in the Order. Contrary to the Court's reasoning, a plaintiff does not need to make allegations of fraud which are "tangential" to, "completely independent" of, or not "directly relevant to" the subject matter of the related contract in order to state a claim for fraud in the inducement. Second, the Order does not take into account the other cases cited by Plaintiffs in support of their fraud claim, which make clear that fraud in the inducement  provides redress when a buyer is tricked into contracting by a seller's prior, extra-contractual representations, even when those representations directly relate to the seller's ability to perform under the contract. Finally, prior to entering the Order, the Court did not hear oral argument on the basis of Plaintiffs' fraud claim, or consider documents which the Court directed Plaintiffs to provide in support of their fraud claim. As a result, the Court was misled by Konal's mischaracterization of Plaintiffs' allegations in support of Count I. For these reasons, as described in more detail below, Plaintiffs respectfully request that the Court reconsider its Order, and enter an order denying Konal's Motion to dismiss Plaintiffs' claim for fraud in the inducement.

## STATEMENT OF FACTS

**A.**   **Konal Makes a Series of Either Knowingly or Recklessly False Statements During Sales Pitches to ACH.**

The series of events giving rise to this lawsuit began with ACH's issuance of several requests for quotes for cast skin systems in the first quarter of 2009. (Dkt. 1, Compl., ¶ 9). ACH entered into discussions with several companies, including Konal, who reportedly had experience in manufacturing cast skin systems. *Id.* During these discussions, Konal aggressively marketed itself to ACH as a well-established designer and builder of machinery used to manufacture a wide range of automotive interior components. *See* Dtk. 1, Ex. B to Compl., Sales Presentation, pp. 1-4, 8. Konal emphasized the proven nature of its technology, the satisfaction of its current customers, and the wide range of customer support services it could offer ACH. *Id.*, pp. 9-11, 38, 44.

Konal was not the only company which ACH could have chosen as a supplier of cast skin systems. As reflected in Konal's sales pitches, several other companies design and build machinery for manufacturing cast skins. *Id.,* pp. 43-46. Nevertheless, Konal convinced ACH that its level of general automotive interiors manufacturing experience was comparable to that of its competitors, that Konal could provide better long-term support than other industry players, and that Konal's personnel were capable of ongoing innovation and improvement in their manufacturing processes beyond the specific cast skin technology being marketed to ACH.

Relying on Konal's pre-contractual representations, ACH selected Konal as its supplier of cast skin systems, and prepared engineering specifications and purchase orders for Konal. (Dkt. 1, Compl., ¶¶ 22-28). These specifications and purchase orders did not require Konal to somehow confirm its purported status as a well-established, experienced manufacturer of

machinery for automotive interiors, or to exceed its competitors' manufacturing abilities, customer service, or future capabilities for technological innovations. Nor did the engineering specifications and purchase orders require Konal to verify that it possessed basic engineering know-how suitable for designing and building complex machinery. The engineering specifications and warranties in the purchase orders merely required Konal's cast skin systems to satisfy requirements such as adequate jobs-per-hour, machine cycle time, and workmanship, independent of the design or specific operational processes of the cast skin systems themselves.

**B.    Plaintiffs Learn That Konal's Sales Pitches Intentionally Misrepresented Konal's Experience and Organizational Capabilities.**

Shortly after the deliveries of Konal's cast skin systems to ACH ("System One" and "System Two" respectively), ACH learned that Konal's sales presentations had severely diverged from reality. First, at the time of making its sales pitches, Konal had nowhere near the level of general engineering experience or expertise it had described to ACH. (Dkt. 1, Compl., ¶ 50). Nor had Konal achieved high levels of customer satisfaction; ACH discovered that one of Konal's earlier machines had already been scrapped by the customer after it presented unsolvable operational and design flaws. *Id.*, ¶ 48. Moreover, in addition to production and operational shortcomings covered by warranties, the basic sloppiness of Konal's design and construction of System One and System Two made clear that at the time of its sales pitches, Konal was incompetent to manufacture **any** kind of complex industrial machinery, whether for the manufacture of cast skins or any other purpose. *Id.*, ¶ 50. To make matters worse, contrary to Konal's pre-contractual representations, Konal's personnel lacked the basic engineering know-how to find root causes of machine failures and devise solutions. *Id.*, ¶ 21. In short, ACH

3

learned that not only did Konal's System One and System Two fail to confirm to the character and quality demanded by ACH as reflected in the engineering specifications and purchase orders, but Konal had misrepresented its basic organizational characteristics as an experienced, competent machine builder and designer in order to induce ACH to contract with it.

**C.**     **Konal Moves to Dismiss Plaintiffs' Claim for Fraud in the Inducement, Based on Misrepresentations of Plaintiffs' Allegations.**

Plaintiffs filed this lawsuit against Konal on February 20, 2012.  Count I of Plaintiffs' Complaint presented a claim for fraud in the inducement, based on Konal's misrepresentations described above.

Konal filed its Motion on April 4, 2012.  Among other relief, the Motion sought dismissal of ACH's Count I on the basis of the economic loss doctrine. (Dkt. 12, pp. 8-13). Notwithstanding the Complaint's allegations as to Konal's extra-contractual representations during its marketing efforts, Konal claimed that "Plaintiffs have failed to allege any wrongdoing by Konal independent of the alleged breach of a supposed contract or warranty."  *Id.*, p. 13. Konal's reply brief in support of this Motion contained a lengthy chart which purported to summarize Plaintiffs' allegations of fraud in the inducement, all of which Konal re-characterized as either "[s]tatement[s] of opinion. **Not actionable**," or "[a]llegations go to the resulting quality of the goods manufactured by Konal. **Warranty claim**."  (Dkt. 19, pp. 3-5) (emphasis in original).

**D.**     **The Court Dismisses Count I of Plaintiffs' Complaint, Without Hearing Oral Argument on Plaintiffs' Fraud in the Inducement Claim.**

The Court heard oral argument on Konal's Motion on August 21, 2012.  The Court asked the parties to address the issue of which aspects of Konal's sales presentations Plaintiffs contended to be actionable statements of alleged fact, as opposed to statements of opinion. (Ex.

4

A, Transcript, pp 8-9).  The Court directed Plaintiffs to provide Konal with a marked-up version of the Konal sales presentation attached to the Complaint, designating which statements Plaintiffs considered to be statements of alleged fact and statements of opinion.  *Id.*, pp. 7-8. After this discussion, the Court directed the parties to address different aspects of Konal's Motion.  As a result, Plaintiffs never had the opportunity to inform the Court of the serious discrepancies between Konal's mischaracterizations of Plaintiffs' fraud allegations, and Plaintiffs' actual statements in the Complaint.

After the hearing, Plaintiffs provided Konal with their mark-up of the sales presentation, as directed by the Court.  (Ex. B).  As this presentation makes clear, Konal made numerous statements of alleged fact during the marketing process which had nothing to do with the warranties governing System One and System Two: (1) representations of Konal's wide range of automotive manufacturing experience; (2) the high degree of satisfaction of Konal's prior customers; (3) Konal's customer service capabilities; and (4) Konal's ability to implement manufacturing innovations in the future to enhance ACH's manufacturing abilities.  *Id.*  The Court did not consider this presentation or ask Plaintiffs to explain their contentions prior to issuing the Order.

On October 16, 2012, the Court issued its Order denying Konal's Motion as to all aspects of Plaintiffs' Complaint other than Plaintiffs' claim for fraud in the inducement.  The Court dismissed Plaintiffs' claim for fraud in the inducement, however.  The Court found that although "Plaintiffs argue that their fraud claims are premised on Konal's general boasts regarding their automotive engineering and cast skin system design . . . [t]he Court does not find this argument persuasive.  It is fairly clear that Konal's claims were directly relevant to their provision of Systems 1 and 2 in the contract."  (Dkt. 45, p. 4).

5

In reaching this conclusion, the court relied on *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys., LLC,* 678 F. Supp. 2d 553 (E.D. Mich. 2009), and *Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.,* 209 Mich. App. 365, 532 N.W.2d 541 (1995).  With respect to *Ypsilanti*, the Court held that the fraud in the inducement claim of the buyer in that case was based on the seller's claims that it "(1) was backed by an $8 billion dollar company; (2) that the company stood behind [the seller]; (3) that [the seller] was backed and supported by a research department and a technical group; (4) that [the seller] was insured by [the larger company]; (5) that [the seller] was part of a partnership in which [the larger company] was the only general partner; (6) that [the seller] was a publicly traded company on the NYSE; (7) that [the seller] was a division of the worldwide [larger company]."  *Id.*, p. 4.  The Court held that these factors show that "case law requires much more tangential information to constitute fraud in the inducement."  *Id.*

The Court held that the reasoning of the *Huron* court applied to Plaintiffs' Count I, rather than the reasoning of *Ypsilanti*.  *Id.*  The Court found that Plaintiffs' fraud allegations were "a classic 'fraud interwoven with the breach of contract,' which falls outside the fraud in the inducement exception [to the economic loss doctrine]," instead of "completely independent claims regarding, for instance, the involvement of a larger corporation."  *Id.*, p. 5.  Plaintiffs now move for reconsideration of the Court's ruling on this issue, as it is not supported by case law or the allegations in Plaintiffs' Complaint.

**ARGUMENT**

## I.    STANDARD OF REVIEW.

A motion for reconsideration is governed by Local Rule 7.1(h).  LR 7.1(h) provides as follows:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication.  The movant must not only demonstrate a palpable defect by which the court [has] been misled but also show that correcting the defect will result in a different disposition of the case.  [LR 7.1(h)(3)].

A "palpable defect" is a defect that is obvious, clear, unmistakable, manifest or plain." *Scozzari v. City of Claire,* 723 F. Supp. 2d 974, 981-82 (E.D. Mich. 2010) (citations omitted). "A motion for reconsideration addresses only factual and legal matters that the Court may have overlooked."  *Carter v. Robinson,* 211 F.R.D. 549, 550 (E.D. Mich. 2003) (citation omitted). Further, "[c]ourts will generally entertain a motion for reconsideration only when there has been an intervening change in the law, when new evidence has become available, **or when there is a need to correct a clear error or prevent manifest injustice**."  *Id.* (citation omitted) (emphasis added).

## II.    THE ORDER CITES *HURON TOOL* AND *YPSILANTI* FOR LEGAL PROPOSITIONS WHICH THOSE OPINIONS' PLAIN LANGUAGE DOES NOT SUPPORT.

The Court bases its decision to dismiss Plaintiffs' Count I on citations to *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys., LLC,* 678 F. Supp. 2d 553 (E.D. Mich. 2009), and *Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.,* 209 Mich. App. 365, 532 N.W.2d 541 (1995).  (Dkt. 45, Order, pp. 3-5).  The clear defect in the Court's reasoning is that neither case supports the propositions for which they are cited by the Court.  First, although the Court states

7

that "the situation [alleged by Plaintiffs] is much closer to *Huron* than to *Ypsilanti*," (Dkt. 45, p. 5), *Huron* does not in fact contain any description of the alleged representations on which the plaintiff in that case based its fraud in the inducement claim.  The *Huron* opinion simply states that "[t]he fraudulent representations alleged by plaintiff concern the quality and characteristics of the software system sold by defendants," without describing what those representations were. *Huron Tool, supra* at 375.  More importantly, the *Huron* court's basis for dismissing the fraud in the inducement claim was that "[t]hese representations are **indistinguishable** from the terms of the contract and warranty that plaintiff alleges were breached," **not** that the alleged representations were not sufficiently "tangential" or not "completely independent" of the subject matter of the parties' contract, or that the fraud allegations of that plaintiff were "directly relevant" to the provision of goods under the contract.  *Huron Tool, supra* at 375 (emphasis added); *cf.* Dkt. 45, Order, pp. 4-5.

Nor did the *Ypsilanti* court uphold that plaintiff's fraud in the inducement claim because it found the seller's misrepresentations to be "tangential" or "completely independent" of the related contract's subject matter.  To the contrary, the *Ypsilanti* court summarized the facts underlying the buyer's fraud in the inducement claim as follows:

> Because the air ionization technology [for use in the buyer's sewage treatment plant] was so new to [buyer], it was important to them that the company from whom they purchased the equipment had the financial and technical wherewithal to ensure that they could stick with the project and get it right. [*Ypsilanti, supra* at 560] . . . . Given the explicit nature of the [seller's] representations relating to financial strength, **technological capabilities**, and the depth of [its] reserves for guaranteeing performance of the . . . contract . . . such statements cannot be considered mere 'puffery' or opinion.'" [*Id.* at 570 (emphasis added)].

The "involvement of a larger corporation" was not, as the Court's Opinion states, viewed by the *Ypsilanti* court as being "completely independent" of the subject matter of the contract. Rather, the supposed "involvement of a larger corporation" capable of delivering advanced technology was the prime factor which led the buyer in *Ypsilanti* to contract with the seller for the delivery of this technology, and the seller suffered damages because this representation was fraudulently made:

> [Seller] argues that the damages suffered by [buyer] flow not from the alleged fraud but from the non-conforming equipment . . . . [Seller] misses a fundamental point of [buyer's] claim, i.e. that [buyer] would not have entered into the contract in the first instance had it known that [seller] was withdrawing. It may have decided to revert to [older] technology or it may have decided to go with . . . another supplier. In any case, [buyer] argues, it would not now be stuck with over $600,000 dollars worth of non-functioning equipment, a potentially uncollectible defendant and several years without the odor control [technology] it thought it had purchased." [*Id.* at 570-71].

In short, the *Ypsilanti* seller's fraudulent representations caused harm precisely because that seller misrepresented its ability to comply with the terms of the future contract in order to induce the buyer to choose it as a supplier. Nowhere does the *Ypsilanti* opinion state that the alleged involvement of a larger company was the deciding factor in its ruling; rather, the involvement of the larger company was simply the particular misrepresentation of the "character and quality of the contracting parties" which induced reliance in that case. *Id.*, p. 567. Further, the language of *Ypsilanti* makes clear that the fraud alleged by the plaintiff **was** "directly relevant" to the provision of goods under the contract, but that fraud in the inducement nevertheless remained a viable cause of action. If the *Ypsilanti* court had applied this Court's requirement that allegations of fraud be "tangential" or "completely independent" of performance under the contract, the *Ypsilanti* decision would have gone the other way.

9

Rather than requiring allegations of fraud to be "tangential" to or "completely independent" of the related contract, both *Huron* and *Ypsilanti* emphasize that claims for fraud in the inducement are intended to provide redress in situations where "one party was tricked into contracting" and "deprive[d] . . . of the ability to make an informed decision in choosing to enter into the contract." *Huron, supra* at 371; *Ypsilanti, supra* at 567. This definition makes clear that fraud in the inducement, by its very nature, is "directly relevant" to the underlying contract. The Court's Order imposes much higher barriers to claims for fraud in the inducement than envisioned in *Ypsilanti* and *Huron*. The Court should therefore reconsider its order dismissing Plaintiffs' claim for fraud in the inducement, and deny Konal's Motion to the extent it seeks such dismissal.

### III. **THE ORDER OVERLOOKS THE ADDITIONAL AUTHORITIES CITED BY PLAINTIFFS, WHICH CLEARLY SHOW THAT ALLEGATIONS UNDERLYING CLAIMS FOR FRAUD IN THE INDUCEMENT NEED NOT BE "TANGENTIAL" TO OR "COMPLETELY INDEPENDENT" OF THE RELATED CONTRACT.**

The Order also overlooks the other authorities cited by Plaintiffs in support of their claim for fraud in the inducement. Both *Huber v. Crop Prod. Serv., Inc.,* No. 06-14564, 2007 WL 2746625 (E.D. Mich. Sept. 19, 2007) and *Tramontana v. May*, Nos. 02-10012, 02-10234, 2004 WL 539065 (E.D. Mich. Mar. 16, 2004) make clear that fraud in the inducement exists where one party tricks the other into contracting with it, even if the fraudulent statements are "directly relevant" to the subject matter of the contract.

Both *Huber* and *Tramontana* involve contracts which sellers breached. The Eastern District ruled in both cases that the buyers could bring claims for fraud in the inducement even though their allegations were not "completely independent" of the sellers' breaches of the underlying contracts. For instance, in *Huber*, the seller performed soil analysis and used the

10

results as a means of convincing the buyer that it needed the seller's specialized fertilizer. *Huber, supra* at *2 (unpublished cases collected at **Ex. C**). Subsequently, the seller delivered a lower-quality fertilizer, and the buyer brought a claim for fraud in the inducement which alleged that the seller had never been capable of delivering a product that conformed to its sales representations. *Id.* at *6. The buyer's claims in *Tramontana* bore even closer relation to the underlying contract, because the buyer in that case alleged that the seller committed fraud in the inducement by misrepresenting the price and quantity of pollen it would supply under a contract. *Tramontana*, *supra* at *10-11.

In both cases, the Eastern District ruled that the pre-contractual inducements to enter into a contract supported claims for fraud in the inducement, because the buyers "relied on recommendations that were distinct from the later execution of the contract" and were harmed by "conduct [which] interfered with the conventional market forces in a manner that is beyond the power of the law of contracts to protect." *Huber, supra* at *6; *Tramontana, supra* at *12. This reasoning is entirely consistent with *Huron*: "[f]raud in the inducement, however, addresses a situation where the claim is that one party was tricked into contracting." *Huron, supra* at 370 (citation omitted).

Other opinions from this district further clarify that fraud in the inducement occurs where the seller tricks the buyer into contracting by making false or reckless representations about its abilities to perform under a contract. *Groeb Farms, Inc. v. Alfred L. Wolff, Inc.*, 08-cv-14624, 2009 WL 500816 (E.D. Mich. Feb. 27, 2009) involved a contract requiring the seller to deliver honey originating in India and Korea to the buyer, which the seller claimed it was capable of doing in its sales pitches. *Id.* at *5 (Ex. C). The seller subsequently breached its contractual obligations to provide this honey, and the buyer alleged that the seller had known it was

incapable of honoring the contract even at the time of its sales pitches to the buyer.  *Id.*  The court held that "[the seller's] alleged misrepresentations do not merely 'concern the quality and characteristics of' the honey to be supplied by it, . . . **but rather have the independent harm of potentially inducing [buyer] to enter into a contract with a party that knowingly and intentionally made a promise it could not keep**."  *Id.* (emphasis added).

Another instructive case is *Metropolitan Alloys Corp. v. Considar Metal Marketing, Inc.*, No. 06-12667, 2007 WL 2874005 (E.D. Mich. Sept. 25, 2007) (Ex. C).  That case involved a seller who orally promised to provide zinc to the buyer in adequate quantities to meet customer needs, contingent upon the buyer's receipt of a customer order.  *Id.* at *2.  After the buyer received an order and thereby triggered the seller's obligation to provide the zinc, the seller refused to honor the agreement based on a change in market conditions.  *Id.*  The buyer sued the seller for fraud in the inducement, and the court agreed that the buyer had properly stated this claim: "[seller's] alleged misrepresentations would not merely have 'concerned the quality and characteristics of' the SHG zinc to be supplied by [seller] . . . but rather would have produced the independent harm of inducing [buyer] to enter into a contract with a party that knowingly and intentionally made a promise it could not keep.  Accordingly, the Court finds that Plaintiff's allegations of fraud stand sufficiently apart from any alleged breach of a contractual obligation to surmount the bar of the economic loss doctrine . . . ."  *Id.* at *6.[1]

Finally, in *Mid-American Gunite, Inc. v. Sauereisen, Inc.*, No. 06-11204, 2006 WL 1374505 (E.D. Mich. May 19, 2006), the court dismissed a buyer's fraud in the inducement

---

[1] The *Considar* court also noted that "[i]t is of no moment . . . that [buyer] has explicitly asserted a breach of contract claim . . . . Under familiar rules of pleading, a plaintiff may pursue two or more theories of recovery in the alternative and 'regardless of consistency.'  Fed. R. Civ. P. 8(e)(2)."  *Id.* at *7.  Thus, the fact that Plaintiffs have also alleged facts in support of their breach of warranty claims does not undermine their ability to pursue a claim for fraud in the inducement.

claim because it found that the buyer had not pleaded that the seller "misrepresented its qualifications to sell the product," but only alleged that the quality and character of the goods delivered were not as warranted.  *Id.* at *2 (Ex. C).  The clear implication of this holding is that if the buyer *had* pleaded that the seller misrepresented its abilities to supply the product, the plaintiff *would* have stated a claim for fraud in the inducement.

Under this Court's requirement that allegations of fraud in the inducement must be "tangential" to, "completely independent" of, or not "directly relevant" to performance under the contract, none of the courts cited above would have found that the respective plaintiffs had stated claims for fraud in the inducement.   In each of these cases, the seller convinced the buyer to enter into a contract by recklessly or intentionally misrepresenting its ability to perform.  The seller then not only breached the contract, but did so under circumstances which made clear that its pre-contractual representations were fraudulent.  As emphasized in *Huron,* "[f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in fact that ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior."  *Huron, supra* at 373-74.  The Order fails to consider this well-established basis for claims for fraud in the inducement.  The Court should therefore reconsider its dismissal of Plaintiffs' Count I, and enter an order denying Konal's request to dismiss Plaintiffs' claim for fraud in the inducement.

IV.   **IN THE ABSENCE OF ORAL ARGUMENT ON THE ISSUE, THE COURT WAS MISLED BY KONAL'S MISREPRESENTATIONS OF PLAINTIFFS' FRAUD ALLEGATIONS.**

The Court's determination that Plaintiffs' allegations of Konal's pre-contractual misrepresentations all related to the character and quality of System One and System Two indicates that the Court was misled by Konal's mischaracterization of Plaintiffs' allegations. Konal's reply brief attempts to recast all of Plaintiffs' statements regarding Konal's fraudulent sales presentations as "[a]llegations [which] go to the quality and performance of the goods that would be manufactured by Konal." (Dkt. 19, pp. 4-5). For instance, Konal claims that paragraph 13 of the Complaint relates to the performance of the goods manufactured by Konal and is therefore a warranty claim, when paragraph 13 actually alleges that Konal personnel "repeatedly mentioned to ACH that they were aware of the serious difficulties ACH had encountered with one of its prior suppliers of machinery for making instrument panels. [Konal representatives] assured ACH that unlike this prior supplier, Konal was a competent manufacturer and would not cause ACH the pervasive problems ACH had experienced with this prior supplier." (Dkt. 1, Compl., ¶ 13). By its express text, this allegation says nothing whatsoever about the as-warranted characteristics of System One or System Two; it alleges that Konal's employees generally represented that Konal was a better, more reliable supplier than a prior ACH supplier, with the intent of inducing ACH to contract with Konal.

Even more misleadingly, Konal's "summary" conflates **all** of Plaintiffs' allegations, making it appear that Plaintiffs' general factual allegations were all made solely in support of Plaintiffs' claim for fraud in the inducement. **Every one** of the paragraphs "summarized" by Konal in its reply brief is contained in the "General Allegations" section of Plaintiffs' Complaint. *See* Dkt. 1, ¶¶ 3-22. In light of Plaintiffs' ability to plead their claims alternatively, as provided

14

by Fed. R. Civ. P. 8(e)(2), it is inappropriate for Konal to assert that Plaintiffs' general factual allegations must all be construed as made in support of one count of the Complaint.

Plaintiffs were prepared to highlight these misrepresentations to the Court during oral argument on August 21, 2012.  Based on the Court's direction of oral argument at that hearing, Plaintiffs were unable to do so.  Unfortunately, this appears to have resulted in the Court being misled by Konal's misstatements of Plaintiffs' allegations.  The Court should therefore reconsider its Order dismissing Plaintiffs' claim for fraud in the inducement.

**V.    AT THE COURT'S DIRECTION, PLAINTIFFS HAVE PREPARED ADDITIONAL DOCUMENTATION IN SUPPORT OF THEIR FRAUD IN THE INDUCEMENT CLAIM, WHICH THE COURT DID NOT CONSIDER PRIOR TO ISSUING ITS ORDER.**

In issuing its Order dismissing Plaintiffs' fraud in the inducement claim, the Court did not consider the marked-up version of Konal's sales presentation which the Court had directed Plaintiffs' counsel to prepare.  This presentation makes clear that numerous aspects of Konal's pre-contractual representations to ACH had nothing to do with the quality or characteristics of System One and System Two, and thus support claims for fraud in the inducement even under the Court's narrow view of that doctrine:

| Page | Factual Representation |
|---|---|
| 4 | Konal's experience providing machinery for manufacturing "instrument panels, doors systems, steering wheels lines, headrests and HIC foam, headliner systems, seating lines, carpet/flooring, dashes insulators [and] silencers." |
| 5 | Konal's ability to provide "engineering and innovation" in manufacturing "PU foam, thermoforming, carpet systems, PVC, TPU, TPO slush/casting, PU spray, silencers, insulators, steering wheels, [and] PU injection." |
| 10 | Describing "other technologies we offer" as "spray PU, headliner systems, carpet forming, press bonding, vacuum forming, back foaming, injection |

15

| | |
|---|---|
| | PU, pierce die press systems, assembly automation [and] aluminum cast tooling." |
| 11 | "Complete Konal In-house Product Offering" for its machinery, including "engineering, tool handling system, PU delivery, PU spray systems, Slush systems, in-mould coating systems, mold release delivery, seating lines, presses, tools, integration and controls, manufacturing, installation, start-up assistance, process assistance, [and] post installation service." |
| 13 | Konal's ability to provide a "dedicated program manager" for "single point contact, electronic messaging/project status, online design retrieval, product definition, project timing/tracking, cost tracking, [and] customer satisfaction." |
| 27-28 | Konal's "experienced double slush systems" for two-tone interiors, capabilities which ACH did not ask Konal to provide in System One or System Two. |
| 40 | "Customer reported tool life, 210,000 cycles and counting!" with respect to other machines manufactured by Konal: "no cracks, no refurbishing, no welding, no CHANGES from day 1." [emphasis in original] |

Plaintiffs designated each of these representations as statements of alleged fact by Konal. (Ex. B).  These representations of Konal's comprehensive engineering experience are only "directly relevant" to System One and System Two to the extent that they highlight Konal's purported qualifications to design, build, and assist in operating complex industrial machinery, i.e. "the character and quality of the contracting part[y]" rather than the specific goods to be produced.  *See* Dkt. 45, *quoting Ypsilanti, supra* at 567.  As *Ypsilanti* and the other cases cited above make clear, it is precisely these types of representations which give rise to claims for fraud in the inducement if they are recklessly or intentionally false when made.

Nor could any of these representations have been incorporated into the purchase orders and engineering specifications issued by ACH to Konal, by warranty or otherwise.  First, although Konal's representations of its experience are directly relevant to its ability to

16

manufacture suitable cast skin systems for Plaintiffs, they do not relate to any aspect of System One or System Two themselves.   Rather, they relate to Konal's supposed qualifications to provide Plaintiffs with **any** type of sophisticated industrial machinery.   Second, it would have been futile for Plaintiffs to require Konal to contractually promise that it had not misrepresented its organizational abilities during its sales pitches; as recognized in *Huron*, fraud in the inducement exists as a cause of action because "the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior" in the first place.   *Huron, supra* at 373.   Konal's fraudulent sales pitches had this exact effect on Plaintiffs' decision to source Konal as a supplier.   As a result, the Court should reconsider its dismissal of Plaintiffs' claims for fraud in the inducement, and enter an order denying Konal's Motion to dismiss this claim.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

For the forgoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Reconsideration, enter an order denying Konal's Motion to the extent it seeks dismissal of Count I of Plaintiffs' Complaint, and grant such other and further relief as the Court deems appropriate and just.

Date:  October 30, 2012                              *Respectfully submitted,*

17

DYKEMA GOSSETT PLLC

By: /s/ Thomas H. Trapnell
    James P. Feeney (P13335)
    Thomas S. Bishoff (P53753)
    Thomas H. Trapnell (P74345)
    Attorneys for Plaintiffs
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-5341 or (313) 568-5414
    jfeeney@dykema.com
    tbishoff@dykema.com
    ttrapnell@dykema.com

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System, which will send notification of such filing to all ECF users.

DYKEMA GOSSETT PLLC

By:<u>/s/ Thomas H. Trapnell</u>
James P. Feeney (P13335)
Thomas S. Bishoff (P53753)
Thomas H. Trapnell (P74345)
Attorneys for Plaintiffs
400 Renaissance Center
Detroit, MI 48243
(313) 568-5341 or (313) 568-5414
jfeeney@dykema.com
tbishoff@dykema.com
ttrapnell@dykema.com

19